IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action **No. 10-cv-01219-JLK**

**DOUGLAS SELLIER**

        Plaintiff,

v.

**J. FLORES,**
**ALAN VAN'T LAND,**
**STEVEN COLLINS,** and
**FELIX JULIANO,** in their individual capacities,

        Defendants.

---

ORDER

---

**Kane, J.**

Plaintiff Douglas Sellier is a fifty-one-year-old white male. The instant action arises out of Mr. Sellier's contact with Defendants, Colorado Springs Police Officers Juan Flores, Alan Van't Land, Steven Collins and Felix Juliano[1] on June 2, 2009 regarding Mr. Sellier's grandson, Joseph.

On that date, Mr. Sellier was at home when his daughter called to inform him that the police were attempting to take Joseph pursuant to a protection order, of which she was allegedly in violation. Mr. Sellier instructed his daughter to bring Joseph to the house. Pl.'s Ex. 1, Sellier Dep. 32:12-32. Upon her arrival, Mr. Sellier immediately took the child inside. *Id.* at 34:8-15, 35:17-23. When he returned outside moments later, he found Officer Newell of the CSPD standing at his fence. *Id.* at 35:24-36:1-6; *see also* Defs.' Ex. 2, Newell Aff. 1 ¶3.

---

[1] Both parties agree that Officer Juliano should be dismissed from this lawsuit, and Plaintiff filed a motion to that end. *See* Mot. to Dismiss Def. Felix Juliano without Prejudice (doc. 52).

Officer Newell insisted that Mr. Sellier deliver Joseph, indicating that if Mr. Sellier failed to comply, he would resort to force. Pl.'s Ex. 1, Sellier Dep. 37:6-7. When Mr. Sellier did not comply, Officer Newell repeated his demand. *Id.* at 37:22-23. Mr. Sellier then asked if the officer was "trying to force [Mr. Sellier] to protect [his] family and [his] home in a questionable manner?" *Id.* at 37:24-38:3. When asked if that was his true intent, Mr. Sellier responded with an equivocal "I guess." *Id.* at 38:3-40:7. Interpreting this response as a threat of resistance, Officer Newell declared Mr. Sellier under arrest, and ultimately called for back up. *Id.* at 40:8-10; *see also* Defs.' Ex. 2, Newell Aff. 2 ¶5. He did not, however, restrain Mr. Sellier, even though Mr. Sellier had extended his hands in apparent acquiescence. Pl.'s Ex. 1, Sellier Dep. 44:20-25.

Confused by the situation, Mr. Sellier asked Officer Newell to explain what was happening. Officer Newell stated that he was acting pursuant to a protection order for Mr. Sellier's grandson Joseph. *Id.* at 44:14-19, 48:16-49:13. Mr. Sellier requested to see the order and attempted to explain that Joseph's father was a registered sex offender. *Id.* at 49:9-24. Officer Newell disregarded these statements, *id.* at 49:24-50:24, and despite Mr. Sellier's renewed requests to see the protection order, Officer Newell refused to retrieve a copy from his car. Instead he declared Mr. Sellier under arrest once more. Mr. Sellier again offered his hands in compliance, and Officer Newell again chose not to restrain him. *Id.*

Thus, still unrestrained, Mr. Sellier went into the house to grab his computer to show Officer Newell the online sex-offender registry. *Id.* at 56:9-15, 57:23-58:6. When he returned shortly thereafter, the back-up officers, including all four Defendants, were arriving on scene. *Id.* at 56:25-57:22. Defendants had been informed that the situation was a code three, and therefore warranted immediate emergency response and the use of patrol lights and sirens. Specifically, Defendants had been told that a man was holding a baby in violation of a protection order and

had threatened to protect his property. *See, e.g.*, Defs.' Ex. 3, Juliano Dep. 24:3-25:6; *see also* Defs.' Ex. 2, Newell Aff. 2 ¶5.

After they arrived, Defendants and Officer Newell approached Mr. Sellier, who was now sitting on his front porch waiting for his laptop to boot up. *See* Pl.'s Ex. 1, Sellier Dep. 63:3-9; *see also* Defs.' Ex. 3, Juliano Dep. 25. Officer Newell reached for Mr. Sellier's left wrist and exchanged head gestures with Officer Flores, who was approaching Mr. Sellier from behind. Pl.'s Ex. 1, Sellier Dep. 63:17-64:6. Mr. Sellier recalls feeling, as he was raised to his feet, a sudden sharp pain in his lower back and experiencing a lapse of consciousness that lasted for some duration. *Id.* at 64:6-9. He awoke pinned facedown on the dirt by Defendants Collins, Flores, and Van't Land.[2] *Id.* at 71-74. Drawing all reasonable inferences in the light most favorable to the Plaintiff, as I must, it is logical to infer that this initial pain and loss of consciousness were caused by the use of a taser or some other considerable force.

As Mr. Sellier lay face-down in the yard, Defendants repeatedly commanded that he remove his arms from underneath his chest and put his hands behind his back, but Mr. Sellier did not comply. Pl.'s Ex. 1, Sellier Dep. 73:7-15. In an effort to free Mr. Sellier's arms, Defendant Van't Land struck Mr. Sellier's right shoulder three times—first with an open hand, then with a closed fist. *Id.* at 141:7-19; *see also* Defs.' Ex. 6, Van't L. Dep. 63:1-64:6. After physical force proved unsuccessful, Officer Flores resorted to drive stunning Mr. Sellier.[3] *See, e.g.*, Defs. Ex. 5, Flores Dep. At 55:19-56, 57:13-58:9; Defs.' Ex. 7, Defs.' Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) at 3-4.

All parties agree that Officer Flores tased Mr. Sellier's upper-mid back in drive-stun mode

---

[2] Defendants refute any suggestion that Mr. Sellier was tased while still on the front porch. Rather, the officers contend that the taser was deployed only after Mr. Sellier became resistive of their attempts and commands to place his arms behind his back. *See, e.g.*, Defs.' Ex. 4, Van't L. Dep. 62-65; *see also infra* pp. 3-4.
[3] According to Defendants, deploying a taser in drive-stun mode inflicts only localized pain, and is less debilitating than if deployed in probe mode. *See* Defs.' Ex. 7, Defs.' Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) at 3-4.

at least once for a minimum of three seconds, and that Mr. Sellier responded by attempting to pull the taser off his back, thereby prompting Officer Flores to tase Mr. Sellier's hip for approximately ten seconds. *See, e.g.*, Defs. Ex. 5, Flores Dep. 55:19-56, 57:13-58:9; Pl.'s Ex. 1, Sellier Dep. 69:1-94:11. Mr. Sellier ultimately succumbed to the tasing and surrendered his arms to the officers. *See* Pl.'s Ex. 1, Sellier Dep. 95:18-96:25; *see also* Defs.' Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2) at 4. Defendants handcuffed him and helped him to a sitting position, Pl.'s Ex. 1, Sellier Dep 96:20-25, at which point he complained of difficulty breathing. The officers requested an ambulance to transport Mr. Sellier to Memorial Central Hospital Emergency Room to receive medical attention. *Id.* at 100-101:24. Mr. Sellier's EKG was normal, but he did not remain at the hospital long enough for further tests to be performed, opting instead to return home, humiliated by the events that had transpired. Pl.'s Ex.1, Sellier Dep. 124:16-126:15.

In this lawsuit, Mr. Sellier asserts that Defendants violated his Fourth and Fourteenth Amendment rights by using excessive force in the course of arresting him.[4] Defendants now move for summary judgment on qualified immunity grounds. Having reviewed the parties' briefs, I find oral argument unnecessary. Defendants' Motion for Summary Judgment (doc. 50) is DENIED.

## STANDARD OF REVIEW

Ordinarily, the party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Because Defendants in this case assert a defense of qualified immunity, however, Plaintiff bears the burden of establishing liability. *See, e.g., Cortez v.*

---

[4] Mr. Sellier also sued the City of Colorado Springs, but he moved for, and I granted, voluntary dismissal with prejudice of his municipal liability claims. See Order Granting Plaintiff's Mot. to Dismiss Def. City of Colorado Springs with Prejudice (doc. 15).

*McCauley* 478 F.3d 1108, 1114 (10th Cir. 2007) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001), for the proposition that summary judgment orders deciding qualified immunity issues demand a standard of review distinct from other summary judgment decisions).

Qualified immunity shields officials acting within the scope of their authority from individual liability for constitutional injuries "insofar as their conduct does not violate clearly established statutory rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 229 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, in order to establish liability, Plaintiff must show that (1) the alleged actions violated a constitutional or statutory right and (2) the rights were clearly established at the time of the alleged injury. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1184 (10th Cir. 2010).

Despite this altered framework, however, I apply many principles familiar to the review of "ordinary" summary judgment motions. In determining whether Plaintiff has established a constitutional violation, I do not weigh the evidence and instead view it and draw all reasonable inferences from it in the light most favorable to Plaintiff. *Adamson*, 514 F.3d at 1145 (noting that all factual inferences must be drawn in favor of the non-moving party). No such deference is required, however, in resolving questions of law. Accordingly, Plaintiff bears a heavier burden in establishing that the right allegedly violated was clearly established at the time of his injury. He "must do more than simply allege the violation of a general legal precept; rather, [he is] required to demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that [Defendants'] actions were clearly prohibited." *Id.* (quoting *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992)) (internal quotation marks omitted).

If Plaintiff clears these hurdles, Defendants assume the normal summary judgment burden of establishing that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.*

Once Defendants meet this burden, Plaintiff must demonstrate more than "some metaphysical doubt" as to the material facts to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Neither unsupported conclusory allegations nor mere scintilla of evidence are sufficient to create a genuine dispute of material fact on summary judgment. *See Mackenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). In order to establish a genuine dispute as to a material fact, Plaintiff must either cite to particular parts of materials in the record, or show that the materials cited by Defendants do not demonstrate the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

## ANALYSIS

### *Constitutional Violation*

Mr. Sellier asserts Defendants violated his Fourth and Fourteenth Amendment rights by using excessive force in the course of his arrest.[5] To establish this, Mr. Sellier must show that the level of force used by Defendants was not objectively reasonable in light of the facts and circumstances at the time of the alleged violation. *Graham v. Connor,* 490 U.S. 386, at 396.[6] In assessing the reasonableness of the officers' force, I must carefully balance "the nature and

---

[5] In *Mapp v. Ohio*, 367 U.S. 643 (1961), the Supreme Court ruled that the Due Process Clause of the *Fourteenth Amendment* incorporated the *Fourth Amendment* as to the states.

[6] Because the *Fourth Amendment* "provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct," all claims "that law enforcement have used excessive force—deadly or not—in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham,* 490 U.S. at 395.

6

quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id*. The time at which the force was applied is as important as the manner in which the force was applied. *Id.* at 395. Thus, the totality of the facts and circumstances are to be considered, including such factors as "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Saucier v Katz*, 533 U.S. 194, 200 (quoting *Graham,* 490 U.S. at 396).

The first of the *Graham* factors is not disputed in this case. Mr. Sellier's conduct was not a severe crime; rather, obstructing a peace officer, the crime with which Mr. Sellier was ultimately charged and for which prosecution was deferred, is a class 2 misdemeanor, punishable by as little as $250. Colo. Rev. Stat. §§ 18-1.3-501, 18-8-104. Accordingly, my inquiry will be framed by the remaining two *Graham* factors, the resolution of which demands a more nuanced consideration of the factual circumstances of each particular episode of alleged use of force.

I begin by addressing the first tasing alleged by Mr. Sellier. As an initial matter, although Defendants' depositions reveal no evidence that a taser was used before Mr. Sellier was forced to the ground, in his deposition, Mr. Sellier testified to the contrary under oath. He stated that after he stood up on the front porch in compliance with the officers' demands, he felt a sharp twinge in his lower back and suddenly lost consciousness. Viewing the facts in the light most favorable to the Plaintiff, it is reasonable, if only natural, to infer that Mr. Sellier was drive-stunned or subjected to some other considerable force at this time and was then pinned facedown on the ground even before he had shown any meaningful resistance.

While subsequent events may have reinforced an objectively reasonable belief that Mr. Sellier "posed an immediate threat" and was "actively resisting arrest," Mr. Sellier's initial

7

compliance with the officers' commands could not support such beliefs. Accordingly, the facts of this case, when viewed most favorably to the Plaintiff, simply preclude a determination that no reasonable jury could find the officers' initial use of force and takedown of Mr. Sellier was excessive. For the purposes of summary judgment and qualified immunity, Mr. Sellier has sufficiently established that Defendants violated his constitutional rights under the Fourth Amendment by using excessive force in the course of the first tasing.

Because I have found that Mr. Sellier has established that the officers' initial use of force violated his constitutional rights, I need not and, in fact, decline to reach consideration of the final two tasings. I do note, however, that it is doubtful that these tasings—the only undisputed tasings—would alone be sufficient to establish a constitutional violation. Yet, in construing the facts in the light most favorable to the Plaintiff, these tasings cannot be considered independently of the first; and when viewed in the context of the alleged initial use of force—the veracity of which may be challenged at trial—the argument for reasonableness is greatly diminished.

### *Clearly Established*

Having established that Defendants' actions violated Mr. Sellier's constitutional rights, Defendants' qualified immunity defense now hinges on a determination of whether those rights were "clearly established" at the time and in the context of the circumstances that existed. *Saucier*, 533 U.S. at 207 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. For reasons I will discuss, a reasonable officer would not believe that Defendants' initial use of force, as alleged by Mr. Sellier, was permissible under the law.

To determine whether a right is clearly established, the Tenth Circuit ordinarily looks to see if there was a Supreme Court or Tenth Circuit decision on point, or if the weight of authority from other courts confirms that the law was as the plaintiff claims. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). Because excessive force jurisprudence requires a highly fact-intensive inquiry and a nuanced consideration of all the circumstances, however, there need not be binding precedent on point. *See Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) ("[A] general constitutional rule . . . can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." (internal quotation marks and alterations omitted)). Thus, the Tenth Circuit has adopted a sliding scale: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist,* 359 F.3d. 1279, 1298 (10th Cir. 2004). The plaintiff ultimately bears this burden of demonstrating the necessary "substantial correspondence" between the conduct in question and the contemporaneous state of the law. *Adamson*, 514 F.3d at 1145 (quoting *Janz*, 976 F.2d at 627 (10th Cir.)) (internal quotation marks omitted).

In the case at hand, it is sufficient to note that "an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as [he or] she did." *Casey v. City of Federal Heights,* 509 F.3d 1278, 1286 (10th Cir. 2007) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1197 (10th Cir. 2001)). Here, each of the *Graham* factors advised against the initial, unforewarned application of force. Mr. Sellier's compliance prior to the first tasing casts doubt on any suggestion that the officers believed he was actively resisting arrest or presented an immediate threat at the time. Notably, the court in

*Casey* remarked that it did "not know of any circuit that has upheld the use of a Taser immediately and without warning against a misdemeanant like [the plaintiff]," who was similarly compliant. *Id.* I, too, am unaware of any such instance, and thus I find that on the record before me—which will likely be contested at trial—Defendants' initial use of force, as alleged by Mr. Sellier, was clearly without "legitimate justification." Thus, Mr. Sellier has cleared the second, and final hurdle demonstrating that Defendants are not entitled to qualified immunity from suit.

Defendants now assume the traditional summary judgment burden of establishing that there is no genuine dispute as to any material fact. Because Mr. Sellier has established, as noted above, that there exists a genuine dispute of fact regarding the first tasing—an event central to his claim—Defendants have not carried their burden and their motion is DENIED.[7]

## CONCLUSION

Based on the foregoing discussion, Defendants' Motion for Summary Judgment is DENIED. Furthermore, Plaintiff's unopposed Motion to Dismiss Defendant Felix Juliano without Prejudice is GRANTED.

DATED: July 13, 2011                                BY THE COURT:
                                                                          s/ John. L. Kane
                                                                         Senior U.S. District Judge

---

[7] *See* discussion *supra* pp. 7-8.